## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LINDA McCORMICK,

       Plaintiff,

v.                                      Case No. 08-CV-10075

ROBERT BRZEZINSKI, et al.,

       Defendants.

_____/

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANT'S "MOTION FOR SUMMARY JUDGMENT"

Pending before the court is Defendant Robert Leosh's "Motion for Summary Judgment," filed January 30, 2009. The parties have fully briefed the matter, and the court conducted a hearing on June 9, 2009. The court adjourned the hearing in anticipation of video evidence from *pro se* Plaintiff Linda McCormick; however, upon notification by Plaintiff regarding the inadvisability of using such evidence,[1] the court finds no need to continue the hearing. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant in part and deny in part Defendant's motion.

### I. BACKGROUND

On January 4, 2008, Robert B. Brzezinski, a judge of a Michigan district court, believing that Plaintiff had refused to pay a $65.00 handicap parking violation (Pl.'s 5/2/08 Compl. ¶ 18, Ex. B at 17-18), ordered Plaintiff detained and jailed overnight in the Isabella County jail (*Id.* ¶¶ 16, 23, 28). Plaintiff alleges that she had appealed the

---

[1] At the hearing, Plaintiff represented to the court that she possessed a video that would show Defendant attacking Plaintiff. Plaintiff ultimately failed to produce the video, averring that the video is of low quality and that it lacked important detail. [Dkt. #117.]

violation, but that on December 21, 2004, while her appeal was pending, Brzezinski (not the district court judge issuing the fine) issued an order to show cause why the court should not hold Plaintiff in criminal contempt for failing to pay the fine. (*Id.* ¶¶ 22, 25, Ex. C.) Plaintiff claims that Brzezinski was without jurisdiction to impose criminal penalties for what Plaintiff alleges is a non-jailable offense because he had earlier disqualified himself from hearing the case. (*Id.* ¶¶ 18, 25, 27.) Brzezinski eventually ordered Officer Genik to take Plaintiff into custody because she would not pay the fine. (*Id.* ¶ 33.) Genik did so. (*Id.*) Officer Warra then booked Plaintiff into custody at the City of Livonia jail. (*Id.* ¶ 35.) Plaintiff alleges that Warra verbally abused her, illegally took her mug shot and fingerprints, and used excessive force in taking her fingerprints. (*Id.* ¶¶ 33-39.)

Plaintiff was then transported from the City of Livonia's jail to Isabella County's jail, where she was held overnight before being returned to the City of Livonia and released the next day. Defendant Leosh, of the Isabella County Sheriff's Department ("ICSD"), transported Plaintiff to and from Isabella County by van with several other prisoners. Plaintiff alleges that when Defendant took custody of Plaintiff he made "derogatory comments" about her and then shoved her into the side of the van, punched her in the lower back several times, and kicked her in the back of the knee. (Pl.'s 5/2/08 Compl. ¶ 40; Pl.'s Resp. Aff. ¶¶ 4-6.) Plaintiff alleges that the "only words spoken prior to" Defendant's actions were whether there were steps to get into the transport van. (Pl.'s Resp. Aff. ¶ 6.)

Upon arrival at ICSD, Plaintiff alleges that she could not walk well or lift her legs and had to be helped from the van. (Pl.'s Resp. Aff. ¶ 7.) Officer Morlock of the ICSD

2

filled out Plaintiff's intake papers.  These records indicate that Plaintiff "walks slow and can't lift legs very well," that she exhibited "angry/hostile behavior," "bizarre behavior," that she "walks with stagger," and that she was generally "uncooperative," "non-talkative," and "unpleasant."  (Pl.'s Resp. Ex. A; Def.'s Mot. Ex. 2.)  Plaintiff apparently refused to sign the intake forms; Officer Morlock wrote "uncooperative" on the signature line.  (*Id.*)  Both parties also attach as exhibits Defendant's notes from the days he transported Plaintiff.  The notes do not indicate any altercation such as that alleged by Plaintiff.  (Pl.'s Resp. Ex. B; Def.'s Mot. Ex. 2.)

Plaintiff further alleges that despite being in great pain and experiencing muscle spasms and trouble urinating throughout the night, no medical assistance was offered to her.  (Pl.'s Resp. Aff. ¶¶ 10, 13-14.)  Plaintiff had to have help the next morning to get into the van for transport back to the City of Livonia.  (Pl.'s Resp. Aff. ¶ 15.)  Upon her release from the City of Livonia, Plaintiff proceeded directly to Botsford General Hospital.  (Pl.'s Resp. Aff. ¶ 16.)  Based on medical records from the hospital, Plaintiff appears to have undergone an examination and tests and given a "Final Diagnosis" of: "(1) acute lumbar strain," and "(2) acute lumbar contusion."  (Def.'s Mot. Ex. 3 at 4; *see also* Pl.'s Ex. D.)

Plaintiff subsequently filed this suit against Brzezinski, Genik, Warra, the City of Livonia, and Leosh, pursuant to 42 U.S.C. § 1983 for violation of her First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights.  (Pl.'s 5/2/08 Compl. ¶ 1.)  This court granted summary judgment for Brzezinski, Genik, Warra, and the City of Livonia on May 26, 2009, and only Plaintiff's counts against Defendant Leosh remain.

Plaintiff's complaint enumerates the following counts:

3

Count I:        § 1983 claim against Defendants for intentional violation of Plaintiff's rights pursuant to the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  (*Id.* ¶¶ 46-47.)

Count VI[I]:   § 1983 claim against Defendant for intentionally violating Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.  In particular, Defendant "body slamme[d]" Plaintiff into a van and was indifferent to her medical needs.  (*Id.* ¶¶ 76-85.)

Plaintiff now asks the court to grant her relief in the form of compensatory damages, exemplary damages, punitive damages, costs and attorney fees, and any other appropriate relief.  (*Id.* at 17-18.)

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial.  *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

4

The moving party must first show the absence of a genuine issue of material fact.  *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323).  The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  They must put forth enough evidence to show that there exists a genuine issue to be decided at trial.  *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256).  Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury."  *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material.  *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration in original) (citation omitted)).  A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

## III.  DISCUSSION

Plaintiff alleges that Defendant Leosh violated her Eighth Amendment rights (1) to be free from excessive force and (2) to receive attention for a serious medical injury.  In particular, Plaintiff alleges that Defendant verbally abused her and "body slamm[ed]

5

her repeatedly into the side of [a] van while she was hand cuffed and shackled."  (Pl.'s
5/2/08 Compl. ¶¶ 78-79.)  Plaintiff further alleges that Defendant Leosh "punched her
with his fist in the lower back more than once and kicked the back of her knee."  (Pl.'s
Resp. Aff. ¶ 5, March. 5, 2009.)  Plaintiff also alleges that she was in pain and received
insufficient medical treatment and that she suffered injuries and pain for which she
sought later medical treatment from Botsford Hospital.  (*Id.* ¶¶ 13-18.)

## A. Excessive Force[2]

The Eighth Amendment provides that "cruel and unusual punishments [shall not]
be inflicted."  U.S. Const. amend. VIII.  Nonetheless, "[t]he Eighth Amendment does not
apply to every deprivation, or even every unnecessary deprivation, suffered by a
prisoner, but only that narrow class of deprivations involving 'serious' injury inflicted by

_____

[2]In Plaintiff's complaint, she asserts claims under multiple constitutional
amendments; however, she characterizes her claims against Defendant as a claim of
"excessive force."  (Pl.'s 5/2/08 Compl. ¶¶ 76-85.)  In addressing an excessive force
claim under § 1983, the first step is to identify the exact contours of the constitutional
right alleged to have been violated.  *Graham v. Connor,* 490 U.S. 386, 394 (1989).
"The validity of the claim must then be judged by reference to the specific constitutional
standard which governs that right, rather than to some generalized 'excessive force'
standard."  *Id.*  The Supreme Court has stated that in most instances, the standard
applicable to allegations of excessive force "will be either the Fourth Amendment's
prohibition against unreasonable seizures of the person, or the Eighth Amendment's
ban on cruel and unusual punishments, which are the two primary sources of
constitutional protection against physically abusive governmental conduct."  *Graham v.
Connor,* 490 U.S. 386, 394 (1989).
        Because Plaintiff asserts that the assault occurred after she was taken into
custody following her sentence, her claim is properly characterized as an Eighth
Amendment claim for violation of the prohibition on cruel and unusual punishment.  *See
Miller v. Calhoun County,* 408 F.3d 803, 812 (6th Cir. 2005) ("Although the Eighth
Amendment's protections apply specifically to post-conviction inmates, the Due Process
Clause of the Fourteenth Amendment operates to guarantee those same protections to
pretrial detainees as well." (citations omitted)); *see also Barber v. City of Salem*, 953
F.2d 232, 235 (6th Cir. 1992).  Indeed, Plaintiff herself cites to the Eighth Amendment in
her response brief.  (*See, e.g.*, Pl.'s Resp. at 9.)

prison officials acting with a culpable state of mind." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (quoting *Hudson v. McMillian*, 503 U.S. 1, 20 (1992)). To plead an Eighth Amendment claim for use of excessive force, a plaintiff must show that a defendant employed the use of "unnecessary and wanton infliction of pain." *Hudson*, 503 U.S. at 5 (internal quotation marks omitted). "[T]he core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Jennings v. Peiffer*, 110 F. App'x 643, 645 (6th Cir. 2004) (quoting *Hudson*, 503 U.S. at 6-7). However, de minimis uses of force do not constitute constitutional violations. *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008) (quoting *Hudson*, 503 U.S. at 7-10). "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm.'" *Id.* at 875 (quoting *Hudson*, 503 U.S. at 7) (internal citation omitted). An "absence of serious injury is therefore relevant to the Eight Amendment inquiry, but does not end it." *Id.* (quoting *Hudson*, 503 U.S. at 7). In making this determination, "courts should consider the reasons or motivation for the conduct, the type and extent of force applied, and the extent of inflicted injury." *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-22 (1986)).

Plaintiff alleges that Defendant, "body slamm[ed]" her, punched her, and kicked her without any provocation on Plaintiff's part and that as a result she suffered back pain and had difficulty urinating. In support of her allegations, Plaintiff proffers her sworn affidavit, medical records from her treatment at Botsford General Hospital, her

7

intake papers from Isabella County Sheriff's Department ("ICSD"), and Defendant's lack
of mention of Plaintiff in his own reports.  In response, Defendant states that he does
not remember any interaction with Plaintiff and does not remember ever using force
such as that alleged by Plaintiff.  (Def.'s Mot. at 2.)  Defendant also argues that the
alleged use of force was *de minimis* only and therefore not actionable, and that the lack
of serious injury to Plaintiff supports this position.

      Plaintiff's affidavit states that Defendant "smash[ed] her in the shoulder with his
entire body," "body slamm[ed] her against the van," "punched her with his fist in the
lower back more than once," and "kicked the back of her knee" because she asked
whether there were steps to get into the police van and not on the basis of any other
actions on her part.  (Pl.'s Resp. Aff. ¶¶ 5-6.)  In her affidavit, Plaintiff also states that
she could not walk following this interaction with Defendant, that she suffered pain and
difficulty urinating, that following her release from jail she went to Botsford General
Hospital, and the she has continuing "numbness, spasms, shooting pain, shoulder pain
and can't lift her arm very high." (*Id.* ¶¶ 9, 14, 16-17.)  Plaintiff acknowledges that she
has never sought further medical treatment, although she states this is because of her
financial limitations.  (Def.'s Resp. Ex. 4, Pl.'s Dep. 164:22-24.)

      Plaintiff and Defendant both attach as exhibits Plaintiff's ICSD intake papers, as
filled out by Officer Morlock following the alleged altercation between Plaintiff and
Defendant.  These records indicate that Plaintiff "walks slow and can't lift legs very well,"
that she exhibited "angry/hostile behavior," "bizarre behavior," that she "walks with
stagger," and that she was generally "uncooperative," "non-talkative," and "unpleasant."
(Pl.'s Resp. Ex. A; Def.'s Mot. Ex. 2.)  Plaintiff apparently refused to sign the intake

8

forms; Officer Morlock wrote "Uncooperative" on the signature line.  (*Id.*)  Both parties

also attach as exhibits Defendant's notes from the days he transported Plaintiff.  The

notes do not indicate any interaction such as that alleged by Plaintiff.  (Pl.'s Resp. Ex. B;

Def.'s Mot. Ex. 2.)

      Following her release from jail, Plaintiff proceeded to Botsford General Hospital

where she underwent a medical examination and various tests.  Plaintiff and Defendant

both attach Plaintiff's medical records as exhibits.  While no physician testimony is

included with the exhibits, under the heading "Final Diagnosis" is written: "(1) acute

lumbar strain," and "(2) acute lumbar contusion."  (Def.'s Mot. Ex. 3 at 4; *see also* Pl.'s

Ex. D.)  During the hearing, Plaintiff went to great lengths to argue that an inscription on

one medical report stating, "no soft tissue hematoma," actually states, "*ro* soft tissue

hematoma," for "*rule out* soft tissue hematoma."  (Pl.'s Resp. Ex. D; Def.'s Mot. Ex. 3 at

4 (emphasis added).)  The court, however, finds no support, or indication from the other

examples of the same handwriting, to characterize as reasonable the inference Plaintiff

requests.  In addition, other physician notes state "no retro-peritoneal hematoma."

(Def.'s Mot. Ex. 3 at 3.)

      Plaintiff also points to some test results that certain indicators for her were

slightly outside the "normal range."  (Pl.'s Resp. Ex. D)  However, Plaintiff provides no

physician testimony to interpret what these indicators mean, and the court will not

guess.  Finally, Plaintiff points to the medical records as evidence of what she told

treating medical personnel caused her injuries.  On a form marked "Triage

Assessment/Flow Sheet," below "Chief Complaint/Problem" is written "back pain 'police

did it' bear hugged lower back pain."  (*Id.*)  Another form states essentially the same

9

information beneath the heading "patient states."  (Def.'s Mot. Ex. 3 at 1.)  Several

medical records also noted that Plaintiff herself told them that she couldn't move her

legs.  (Pl.'s Resp. Ex. D; Def.'s Mot. Ex. 3 at 2.)  Other physician notes state that

Plaintiff "did ambulate here hesitantly but without assistance."  (Def.'s Mot. Ex. 3 at 3.)

        As the moving party, Defendant presents only the evidence from ICSD intake

papers to show that Plaintiff was generally uncooperative and acting in a manner

characterized as "angry/hostile" and "bizarre" (Pl.'s Resp. Ex. A; Def.'s Mot. Ex. 2),   and

the medical records from Botsford General Hospital to show that Plaintiff did not suffer

"serious medical injury," but only acute lumbar strain and acute lumbar contusion (Def.'s

Mot. Ex. 3 at 4; *see also* Pl.'s Ex. D).  Defendant argues that *Leary v. Livingston

County*, 528 F.3d 438 (6th Cir. 2007), demonstrates that Plaintiff's injuries were so

minor that any force used against her must have been *de minimis.  Id.* at 443.  In *Leary*,

however, the plaintiff specifically admitted that he received no injury, and the case is

therefore inapposite.  *See* 528 F.3d at 443.  In the instant case, Plaintiff has presented

evidence such that a jury could conclude that Defendant repeatedly hit her hard enough

to cause back pain and bruising.  (*See* Def.'s Mot. Ex. 3 at 4; *see also* Pl.'s Ex. D).

Further, while "injuries must be more than *de minimis* to support a constitutional

violation, they need not be 'serious' or significant,' as long as there is some degree of

actual injury."  *United States v. Budd*, 496 F.3d 517, 531 (6th Cir. 2007) (internal

citations omitted).

        In response to Defendant's evidence, Plaintiff offers her own affidavit, which

alleges, as discussed above, that Defendant shoved her into the side of the van,

punched her more than once in the lower back, and kicked her in the back of the knee

10

because she asked whether there were steps to get into the police van and not on the basis of any other actions or provocation on her part.  (Pl.'s Resp. Aff. ¶¶ 5-6.) Defendant does not counter Plaintiff's affidavit, other than to state that he does not remember any incident involving Plaintiff or "ever using this type of force on anyone under the circumstances as described by Plaintiff."  (Def.'s Mot. at 2.)  Plaintiff has also produced evidence, at least of, acute lumbar strain and acute lumbar contusion, suffered following her transport by Defendant (Def.'s Mot. Ex. 3 at 4; *see also* Pl.'s Ex. D), and the ICSD intake form, upon which Officer Morlock noted that Plaintiff "walks slow and can't lift legs very well" (Def. Mot. Ex. 2).  Further, Plaintiff claims that she suffered in a way that she experienced pain continuing into the following day and that she had difficulty walking.

While Defendant alleges that he cannot remember ever using any such force on any prisoner, when viewing the facts in a light most favorable to Plaintiff, Plaintiff has shown a genuine issue of material fact as to whether Defendant Leosh violated her rights under the Eighth Amendment to be free from cruel and unusual punishment under the circumstances alleged in Plaintiff's affidavit.  *See Bordas v. Washtenaw County*, 1 F. Supp. 2d 680 (E.D. Mich. 1998) (finding that a genuine issue of material fact remained regarding whether defendants used excessive force when plaintiff submitted his own and his nephew's affidavits and medical records of some injury and defendants countered by submitting their own affidavits).  Therefore, the court will deny Defendant's

11

motion as to the issue of whether Defendant used excessive force against Plaintiff as she attempted to get into the police van.[3]

### B.  Deliberate Indifference to Serious Medical Injury

To plead an Eighth Amendment violation for lack of medical care, a plaintiff must show "deliberate indifference to [the] serious medical needs of prisoners [that] constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153 (1976)).  An Eighth Amendment violation includes (1) an objective element of "serious medical need," and (2) a subjective element of "deliberate indifference" by the treating professional.  *See id.* Plaintiff alleges that her injuries were so obvious that Defendant should have known and recognized that she needed medical treatment.  However, Plaintiff does not plead sufficient facts to show that Defendant exhibited "deliberate indifference" toward Plaintiff's "serious medical need."[4]  *See Estelle*, 429 U.S. at 104.

"A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004)); *see also Dodson v. Wilkinson*, No. 06-4136, 2008 WL 5378017, at *5 (6th Cir.

---

[3]Plaintiff also alleges that Defendant verbally abused her; however, this does not constitute a constitutional violation for purposes of § 1983 liability, and the court will grant Defendant's motion as to this issue.  *See Miller*, 109 F. App'x at 65 (citing *Ivey*, 832 F.2d 950, 955 (6th Cir. 1987)).

[4]To the extent that Plaintiff alleges that Defendant exacerbated her "serious medical need" by inflicting further injury upon her, this allegation is addressed above under Plaintiff's claim for use of excessive force.

Sept. 24, 2008) (finding that despite complaints of low blood sugar, stomach pains, asthma, ulcers, irritable bowel syndrome, allergies, and dizzy spells, plaintiff had not shown a "serious medical condition," even though these were symptoms of the Hepatitis C virus).  While the court does not take such claims of pain and discomfort lightly, Plaintiff's claims do not meet the objective criteria for stating an Eighth Amendment claim for "serious medical need" because she conclusorily states she was in "obvious pain."  (Pl.'s Aff. ¶ 13.)  Merely alleging "obvious pain" does not satisfy the objective requirement of "serious medical need."  *See Estelle* 429 U.S. at 104 (quoting *Gregg*, 428 U.S. 153).  While Plaintiff further states in her affidavit that she "had muscle spasm[s] the entire night, pain and could not urinate" (Pl.'s Resp. Aff. ¶ 14), and provides medical records showing that she suffered from a back strain and bruising (Def.'s Mot. Ex. 3 at 4; *see also* Pl.'s Ex. D), these factual allegations are also insufficient to establish an objectively "serious medical need" such that it gives rise to a violation of the Eighth Amendment.  *See Murphy v. Grenier*, No. 07-CV-15248, 2009 WL 1044832, at *5 (E.D. Mich. Apr. 20, 2009) (finding that back pain and muscle spasms do not constitute a "serious medical need" when the plaintiff is nonetheless able to walk) (citing *Blackmore*, 390 F.3d at 897).  Plaintiff never alleges that she informed anyone at ICSD of her pain, and the discomfort Plaintiff alleges are unlikely to be visible to any onlooker such that "'even a lay person would easily recognize the necessity for a doctor's attention.'"  *Harrison*, 539 F.3d at 518 (quoting *Blackmore*, 390 F.3d at 897).

As the second, subjective component to prove an Eighth Amendment violation, a plaintiff must demonstrate "deliberate indifference" in addition to "serious medical need" in order to overcome a motion for summary judgment.  *See Estelle*, 429 U.S. at 104.

13

This subjective component requires Plaintiff to show that Defendant "possessed 'a sufficiently culpable state of mind in denying medical care' . . . . greater than mere negligence."  *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005) (quoting *Blackmore*, 390 F.3d at 895).  Indeed, as Plaintiff correctly states, "deliberate indifference" means at least "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm."  *Sanderhofer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

After Defendant transported Plaintiff to ICSD, Plaintiff was examined there by Officer Morlock.  (Pl.'s Resp. at 16.)  Officer Morlock recorded that Plaintiff "walks slow and can't lift legs very well," but Officer Morlock did not record any further signs of injury, bleeding, or obvious trauma or illness.  (Pl.'s Resp. Ex. A; Def.'s Mot. Ex. 2.)  Nor does Plaintiff allege that she told anyone about her pain.  Indeed, Officer Morlock stated in the report that Plaintiff was "non-talkative" and "uncooperative."  (Pl.'s Resp. Ex. A; Def.'s Mot. Ex. 2.)   Plaintiff provides no factual allegations that anyone knew that she was injured or that Defendant "was aware of the risk of harm."  *Sanderhofer*, 62 F.3d at 154 (citing *Farmer*, 511 U.S. at 837).  Other than Defendant, Plaintiff does not direct these allegations toward any other named Defendant in the case.  Plaintiff appears to allege that those responsible for treating prisoners at ICSD jail were deliberately indifferent.  No such individuals are named in Plaintiff's suit.  Because Plaintiff cannot show a "genuine issue of material fact" as to her claim for deliberate indifference, the court will grant Defendant's motion on this issue.

## IV.  CONCLUSION

14

For the reasons stated above, IT IS ORDERED that Defendant Leosh's "Motion for Summary Judgment" [Dkt. # 88] is DENIED IN PART AND GRANTED IN PART.  It is DENIED as to Plaintiff's claim for use of excessive force and GRANTED in all other respects.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  August 31, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 31, 2009, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\08-10075.McCORMICK.Leosh.Motion.SJ.1983.jjd.wpd