**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LINDA McCORMICK,

    Plaintiff,

v.                                                             Case No. 08-10075

ROBERT BRZEZINSKI, et al.,

    Defendants.
                                       /

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S "MOTION TO
REINSTATE THE CASE THOUGH SETTLEMENT ENFORCEMENT AND TO IMPOSE
SANCTIONS ON THE PLAINTIFF" AND DENYING PLAINTIFF'S "MOTION TO
REINSTATE THE CASE DUE TO DEFENDANT'S VIOLATION OF THE
SETTLEMENT AGREEMENT"**

Pending before the court are (1) Defendant Robert Leosh's "Motion to Reinstate the Case Through Settlement Enforcement and to Impose Sanctions on the Plaintiff"; and (2) Plaintiff's "Motion to Reinstate the Case due to Defendant's Violation of the Settlement Agreement." For the reasons stated below, the court will grant in part and deny in part Defendant's motion, and it will deny Plaintiff's motion.

**I. BACKGROUND**

On December 14, 2009, just before jury selection, Defendant Robert Leosh, acting through counsel, and Plaintiff, acting pro se, indicated that they wished to engage in settlement discussions. The parties reached an agreement and the settlement conference was continued on the record. (12/24/09 Settlement Tr. at 1.) The on-the-record portion of the settlement conference lasted approximately 16 minutes. During this discussion, the parties and the court discussed the material terms of the agreement,

a proposed confidentiality agreement, the method and timing of the payment to Plaintiff, and how the court would address a failure to memorialize the agreement in writing. (12/24/09 Settlement Tr. at 3-16.)

Specifically, the parties agreed that Defendant would pay Plaintiff the sum of $11,000, and Plaintiff would, in turn, sign a standard release for all claims against Defendant, any other employees and agents of Isabella County, and Isabella County itself. (12/24/09 Settlement Tr. at 3-5, 14-15.) Plaintiff was informed that a check would likely be issued within two to four weeks of her signing the release and that if she failed to sign the release, or if the county failed to issue the check, the court would enforce the settlement agreement. (12/24/09 Settlement Tr. at 4-7, 14-16.)

Following the settlement conference, Plaintiff and Defendant were unable to agree on what terms were included in the settlement. Defendant, therefore, ordered the transcript of the settlement conference. (Def.'s Resp. Br. at ¶ 6.) Plaintiff responded by filing an "Emergency Motion for Protective Order to Seal the Settlement Transcript Regarding Defendant Leosh." [Dkt. # 149] The court denied Plaintiff's Motion and informed Plaintiff that no confidentiality agreement had been included in the settlement.[1] (1/6/10 Order).

## II. DISCUSSION

Defendant now claims that Plaintiff has failed to abide by the terms of the settlement and requests that the court enforce the settlement agreement. Plaintiff, however, now claims that Defendant has failed to comply with the settlement agreement

---

[1]The court also denied Plaintiff's motion for reconsideration on the same issue. (1/28/10 Order.)

and that the settlement procedure was unfair; Plaintiff requests that the court reinstate the case and set aside the settlement. Both parties request that the other be sanctioned.

## A. Enforcement of Settlement

Plaintiff argues that Defendant has breached the terms of the settlement agreement for several reasons: (1) Defendant did not provide payment within two weeks of the settlement discussions (Pl.'s Mot. at ¶ 9); (2) Defendant included three terms in the settlement agreement regarding tax consequences (Pl.'s Mot. at ¶¶ 11(i)-(iii)); (3) Defendant requested Plaintiff's social security number (Pl.'s Mot. at ¶ 11(iv)); and (4) Defendant disclosed the terms of the agreement (Pl.'s Mot. at ¶ 12). Defendant argues that Plaintiff knew that payment would not be provided within two weeks (Def.'s Resp. Br. at 3); that the language regarding the tax consequences of the settlement is standard language (Def.'s Resp. Br. at 3); that Plaintiff's social security number is required for Defendant to properly follow federal law (Def.'s Resp. Br. at 6); and that the settlement agreement did not include a confidentiality agreement (Def.'s Resp. Br. at 3-4). The court agrees with Defendant.

"'It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them.'" *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992) (quoting *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988)). The district court's power to summarily enforce settlements extends to cases where the parties have not reduced their agreements to writing. *Brock*, 841 F.2d at 154. This inherent power derives from "the policy favoring the settlement of disputes and the avoidance of costly and time-

consuming litigation." *Kukla v. Nat'l Distillers Prods., Co.*, 483 F.2d 619, 621 (6th Cir. 1973).

"Agreements settling litigation are solemn undertakings, invoking a duty upon the involved lawyers, as officers of the court, to make every reasonable effort to see that the agreed terms are fully and timely carried out." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976). As such, courts should uphold settlements whenever equitable and policy considerations allow. *See id.*

To enforce a settlement, a district court must conclude that agreement has been reached on all material terms. *Re/Max Int'l, Inc.* v. Realty One, Inc., 271 F.3d 633, 645-46 (6th Cir. 2001); *Brock*, 841 F.2d at 154. "[W]hether [a settlement agreement] is a valid contract between the parties is determined by reference to state substantive law governing contracts generally." *Bamerilease Capital Corp.,* 958 F.2d at 152 (quoting *White Farm Equip. Co. v. Kupcho,* 792 F.2d 526, 529 (5th Cir. 1986)). Thus, the court will apply Michigan contract law to determine whether a valid settlement agreement was reached. *See Walbridge Aldinger Co v. Walcon Corp.*, 525 N.W.2d 489, 491 (Mich. Ct. App. 1995) ("An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts.").

Under Michigan law, in order to form a valid contract, there must be a meeting of the minds, or mutual assent, with respect to all material terms of the contract. *Kamalnath v. Mercy Memorial Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992). Further, "[a] meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of

4

mind." *Id.* In making the determination of whether a meeting of the minds occurred, "[t]he court considers the relevant circumstances surrounding the transaction, including all writings, oral statements, and other conduct by which the parties manifested their intent." *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 794 (Mich. Ct. App. 1994). If the parties reached agreement on all material terms, existing precedent "dictates that only the existence of fraud or mutual mistake can justify reopening an otherwise valid settlement agreement." *Brown v. County of Genesee*, 872 F.2d 169, 174 (6th Cir. 1989). Once a settlement is reached, it is the party challenging the settlement who bears the burden to show that the settlement contract was invalid based on fraud or mutual mistake. *Id.* (citing *Callen v. Pennsylvania R. Co.,* 332 U.S. 625, 630 (1948)).

During the settlement conference, the material terms of the agreement were addressed in detail. (12/24/09 Settlement Tr., at 4-7.) In the course of finalizing the agreement during the settlement conference, the court restated the settlement amount and informed Plaintiff that she would be required to sign a standard release. (12/24/09 Settlement Tr., at 13-14.) Plaintiff responded by saying "All right." (12/24/09 Settlement Tr., at 14.) The court then discussed the nature and timeliness of the payment from Defendant; Plaintiff responded by saying "Okay." (12/24/09 Settlement Tr., at 15.) Based on its participation in the settlement conference, and the record of the conference, the court determines that an enforceable contract was created during the settlement conference. Accordingly, during the settlement negotiations, Defendant orally agreed to a settlement amount and a rough time-frame for payment, subject to the County's administrative procedures. And Plaintiff, for her part, agreed to sign a release waiving claims against the County and its agents and employees. For the purposes of

5

Plaintiff's settlement with Defendant Leosh the settlement amount, timing, and agreement to waive claims comprise the material terms of a settlement, and because the parties assented to these terms, an enforceable settlement exists.

Having found that an enforceable settlement agreement, it is next necessary to address the parties' allegations of breach of this agreement. Plaintiff's first claim is that Defendant is in breach because he failed to pay in a timely fashion. During the recorded settlement conference, the court discussed the time frame that is common for payment in settlements of this nature, typically two to four weeks. (12/24/09 Settlement Tr., at 4-5.) But, of course, this time estimate assumes that a written version of the agreement has been signed; here, because Plaintiff never signed the release component of the agreement, Defendant has not yet become obligated to tender a payment on the settlement.

With regard to the tax consequences included in the proposed settlement agreement, Plaintiff specifically contests the following paragraphs:

> G. . . .
>
> All sums set forth herein constitute damages on account of personal injuries or sickness, within the meaning of §104(a)(2) of the Internal Revenue Code of 1986 as amended.
>
> . . . .
>
> J. . . . The Defendants or the Michigan Municipal Risk Management Authority may issue a Form 1099.
>
> . . . .
>
> N. In entering into this Settlement Agreement, the Plaintiff represents that the Plaintiff understands the legal and income tax consequences of the Settlement Agreement; and that the terms of the Settlement Agreement are fully understood and voluntarily accepted by the Plaintiff.

(Def.'s Resp. Ex. 6, Settlement Agreement, at 2.)  Plaintiff argues that these paragraphs are examples of "new and different terms" that were not part of the original agreement. (Pl.'s Mot. at ¶ 11.)  The parties, however, agreed during their settlement conference to include standard language and that, upon review of the court, Plaintiff would be required to sign a release containing such language if the court were satisfied that the language was, in fact, standard language.  (12/24/09 Settlement Tr., at 7.)  The court is, indeed, satisfied that the terms to which Plaintiff now objects are entirely standard language.  In addition, Defendant has requested Plaintiff's social security number so that Defendant may include the same in the Form 1099 referenced in Paragraph J of the Settlement Agreement.  As Defendant has stated, sending a Form 1099 including Plaintiff's social security number is required under Federal Law.  *See Johnson v. LPL Financial Services*, 517 F. Supp. 2d 1231, 1232 (S.D. Cal. 2007); *cf.* I.R.C. § 6721 (imposing penalties for failing to follow reporting requirements).

Finally, Plaintiff argues that the settlement agreement contained a confidentiality provision and that Defendant has breached this provision by providing other Defendants with the terms of the settlement agreement.  As the court has determined previously, no confidentiality agreement was contained in the settlement agreement.  (1/6/10 Order at 2.)  Thus, this argument fails.

Plaintiff has failed to produce any evidence that there was fraud or mutual mistake.  Moreover, as discussed above, the parties agreed on the court record to all of the material terms of the agreement.  Because the parties reached an enforceable settlement agreement, the court will grant Defendant's motion to enforce the settlement and issues orders to impose the material terms of the agreement.

7

### B. Unfair Settlement

Plaintiff argues that the terms of the settlement agreed to during the settlement conference were unfair for the following reasons: (1) the terms were not reduced to writing before she agreed to them (Pl.'s Mot. at ¶¶ 1-3); (2) she did not agree to the terms during the settlement conference (Pl.'s Mot. at ¶ 4); (3) she was under duress and was coerced into settling (Pl.'s Mot. at ¶ 5); (4) she was mislead regarding the reason that no confidentiality statement would be included in the agreement (Pl.'s Mot. at ¶¶ 6-7); and (5) she did not know that she had an expert witness waiting to testify on her behalf (Pl.'s Mot. at ¶ 8).

#### 1. Oral Agreement

Plaintiff first argues that the settlement agreement should not be enforced because the terms were not reduced to writing and because she did not agree to them during the settlement conference. Plaintiff is correct that the terms of the agreement were not reduced to writing before she agreed to them. But it is a long-settled principle of contract law that oral agreements are enforceable. In fact, the court specifically informed the parties that it would enforce the agreement if either party failed to memorialize the settlement with a writing. (12/24/09 Settlement Tr., at 6-7.)

#### 2. Duress and Coercion

Plaintiff argues that the settlement agreement should not be enforced because she was under duress and was coerced into settling. Courts generally agree that to prove duress, a party must show "'first, that one side involuntarily accepted the terms of another; second, that circumstances permitted no other alternative; and third, that the

opposite party's coercive acts caused those circumstances.'" *Toledo Electrical Joint Apprenticeship v. Patchen*, No. 00-3096, 2001 WL 845708, at *2 (6th Cir. 2001) (quoting *Quebodeaux v. Quebodeaux*, 657 N.E.2d 539, 541 (Ohio Ct. App. 1995)); *see General Motors Corp. v. Paramount Metal Products Co.*, 90 F. Supp. 2d 861, 875 (E.D. Mich. 2000) ("To avoid a contract on the basis of duress, a party must prove coercion by the other party to the contract."). Specifically, under Michigan law, the touchstone of coercion and duress is that the victim is deprived of his or her "unfettered will." *Hungerman v. McCord Gasket Corp.*, 473 N.W.2d 720, 721 (1991). Plaintiff has presented no facts to support a claim of duress or coercion.

As explained earlier, the court personally conducted and recorded the settlement conference. There exists no evidence indicating that Plaintiff was coerced. In fact, the catalyst for settling was a surveillance camera video—long in Plaintiff's possession but presented only a week before trial—that recorded the events that Plaintiff characterized as an assault upon her in the garage. The court, having reviewed the video, commented to Plaintiff that nothing in the recording appeared to constitute an excessive use of force by Defendant Leosh, and that the events in the video were largely inconsistent with her allegations. In the court's view, if Plaintiff felt herself under some "duress," in a colloquial sense of the word, it was only because she was faced with beginning trial with irrefutable and damaging evidence she had herself recently produced. Plaintiff was, in fact, entirely free to turn down the proposed terms of the settlement agreement or to walk away from the discussion at any time and proceed to trial.

### 3. Misrepresentation

Next, Plaintiff argues that she was "mislead" and that Defendant "never had any intention" to maintain confidentiality and that Defendant "lied that the County was paying" her instead of an insurance carrier. (Pl.'s Mot. at ¶¶ 6-7.) The court interprets this language to articulate a claim that Defendant misrepresented the facts surrounding the requested confidentiality agreement; the assertion in question is Defendant's counsel's statement that he could not sign a confidentiality agreement because the payment was being made by a governmental entity. During the settlement conference, the requested confidentiality agreement was discussed in great detail. Plaintiff was informed that Defendant could not sign a confidentiality agreement because, among other reasons, as a governmental entity, the County would have "to account for their money" because it would be paying the settlement amount, and that the information would also be available under the Freedom of Information Act and the Public Meeting Act. (12/24/09 Settlement Tr. 9.) Plaintiff asserts that these statements were misleading and untrue because the issued check will come from the Michigan Municipal Risk Management Authority (MMRMA) and not the County itself. But Plaintiff's argument misses the point. Whether the County issues the physical check or not, it is still required to reflect the settlement amount in its public records. Defendant's counsel is not proven to have made a material assertion that did not accord with the facts; there was no material misrepresentation.

### 4. Expert Witness

Finally, Plaintiff argues that the settlement agreement should not be enforced because she was not informed, until after the settlement conference, that she had an expert witness waiting to testify on her behalf. The expert witness, however, was present at Plaintiff's subpoena. Plaintiff knew, or at least should have known, that her witness would be in court at her subpoena. Thus, the court does not agree with Plaintiff that her asserted lack of knowledge interfered with her decision to enter into the settlement agreement.

### C. Sanctions

Plaintiff requests that Defendant "be sanctioned for his unethical conduct." (Pl.'s Mot. at 4.) Defendant has done nothing sanctionable, as evidenced by the fact that he will prevail on these motions.

Defendant requests that Plaintiff be sanctioned under 28 U.S.C. 1927, for unreasonably and vexatiously multiplying the proceedings, and under the court's inherent authority.

### 1. Inherent Authority

In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Supreme Court held that a district court has the "inherent authority" to impose independent sanctions. *Id.* at 43-50. But the "imposition of inherent power sanctions requires a finding of bad faith," *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002), or conduct "tantamount to bad faith," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980). When invoking its inherent authority, "a court must exercise caution . . . and

comply with the mandates of due process." *Dell, Inc. v. Ellis*, No. 07-2082, 2008 WL 4613978, at *2 (6th Cir. June 10, 2008) (citing *Chambers*, 501 U.S. at 50). Nevertheless, a court "should not shrink from exercising [its power] when sanctions are justified by the circumstances." *Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008).

Plaintiff, in the court's opinion, suffers from "buyer's remorse" regarding the terms she agreed to during the settlement conference. Plaintiff negotiated a settlement under circumstances which must have been stressful for her; now, she is attempting to attack the settlement from every angle. The best of her arguments are tenuous, and the worst are plainly frivolous. Nevertheless, given her *pro se* status, there is little evidence that her conduct supports a finding of actual bad faith conduct or conduct tantamount to bad faith.

### 2. 28 U.S.C. § 1927

"Section 1927 provides that any attorney 'who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess of costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Ridder v. City of Springfield,* 109 F.3d 288, 298 (6th Cir. 1997) (quoting 28 U.S.C. § 1927). Under section 1927, the court does not make a determination of subjective bad faith. *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986). Instead, the court must use an objective standard and determine whether "an attorney knows or reasonably should know that a claim pursued is frivolous." *Id.* at 1230.

In *Riddler*, the Sixth Circuit reiterated that, when applying this objective standard,

12

> [S]imple inadvertence or negligence that frustrates the trial judge will not support a sanction under section 1927. There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the *obligations owed by a member of the bar to the court* and which, as a result, causes additional expense to the opposing party.

*Riddler*, 109 F.3d at 298 (quoting *In re Ruben,* 825 F.2d 977, 984 (6th Cir. 1987)) (emphasis added).

Defendant relies on *Wages v. Internal Revenue Service*, 915 F.2d 1230, 1235-36 (9th Cir. 1989) to support his argument that sanctions under section 1927 apply to *pro se* litigants. But, by its terms, section 1927 applies to only "attorney[s] or other person[s] admitted to conduct cases in any court of the United States." Other courts do not agree that section 1927 may be used to sanction *pro se* litigants. *E.g. Sassower v. Field*, 973 F.2d 75, 80 (2d Cir. 1992). Courts that apply section 1927 to *pro se* litigants typically take the stance that "*pro se* plaintiffs [are] 'person [s] admitted to conduct cases' because they had been granted permission to proceed *pro se.*" *Id.* The court agrees with the Second Circuit that "the word 'admitted' in this context suggests application to those who, like attorneys, gain approval to appear in a lawyerlike capacity." *Id.* Moreover, in *Ruben*, the standard articulated by the Sixth Circuit relies on "obligations owed by a member of the bar to the court.'" *Riddler*, 109 F.3d at 298 (quoting *Ruben,* 825 F.2d at 984). It is difficult to envision how a *pro se* litigant could owe an equivalent obligation to the court as that owed by a member of the bar. The court cannot agree that, in this circumstance, §1927 should apply to Plaintiff.

## IV. CONCLUSION

IT IS ORDERED that Defendant's "Motion to Reinstate the Case Through Settlement Enforcement and to Impose Sanctions on the Plaintiff" [Dkt. # 161] is GRANTED IN PART and DENIED IN PART. It is granted in that the court's order dismissing the case will be vacated, and the oral settlement will be enforced. It is denied in that Defendants' requests for sanctions is denied.

IT IS FURTHER ORDERED that the court's "Amended Order of Dismissal" [Dkt. # 146] is VACATED and the Clerk of the Court is directed to reinstate the case.

Consistent with the terms of the oral settlement as discussed above,

IT IS FURTHER ORDERED that no party, person, business entity, municipal corporation, or any other entity with the capacity to be sued, admits liability related to the events described in the Complaint.

IT IS FURTHER ORDERED that Plaintiff, together with her heirs, executors, administrators, assigns, and successors in interest are hereby conclusively deemed to have completely released and forever discharged the County of Isabella, its employees, including but not limited to Officer Robert Leosh, and their administrators, assigns, directors, employees, officers, elected and appointed officials, volunteers, boards, commissioners, and successors in interest ("the Release Parties") from any and all claims, rights, damages, costs, losses of service, expenses, in compensation of any nature whatsoever, whether based on tort, statute, contract, or other theory of recovery, which the Plaintiff now has, or which may hereafter accrue or otherwise be acquired on account of, or may in any way grow out of, or which are the subject of the Complaint including, without limitation, any and all known or unknown claims for bodily and

personal injury to Plaintiff, or any future wrongful death claim of Plaintiff's representatives or heirs, which have or may have resulted from the alleged acts or omissions of the Released Parties.

IT IS FURTHER ORDERED that Plaintiff shall inform Defendant of her social security number.

IT IS FURTHER ORDERED that Defendant shall, as soon as practicable after Plaintiff informs Defendant of her Social Security Number, produce to Plaintiff a check payable to Plaintiff in the amount of eleven thousand dollars.

IT IS FURTHER ORDERED that Plaintiff's "Motion to Reinstate the Case due to Defendant's Violation of the Settlement Agreement" [Dkt. # 157] is DENIED.

       s/Robert H. Cleland
       ROBERT H. CLELAND
       UNITED STATES DISTRICT JUDGE

Dated: April 13, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 13, 2010, by electronic and/or ordinary mail.

       s/Lisa Wagner
       Case Manager and Deputy Clerk
       (313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\08-10075.McCormick.Enforce.Settlement.jam.1.wpd